IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GINO M. SABATINI and                    :        CIVIL ACTION NO. **3:CV-05-2586**
CATHERINE M. SABATINI, his wife,        :
                                        :
            Plaintiffs                  :        Magistrate Judge Blewitt
                                        :
            v.                          :
                                        :
ITS AMORE CORP. and T&M                 :
DRAM CORP.,                             :
                                        :
            Defendants                  :

**MEMORANDUM AND ORDER**

## I. Background.

On October 15, 2009, following a jury trial in the above case, a verdict entirely in favor of

Defendants was returned after a very short period of deliberation.[1]  On October 16, 2009, the

Court entered a Judgment in favor of Defendants and against Plaintiffs (Doc. 140), which provided:

**AND NOW,** this **16th** day of **October, 2009**, pursuant to the October 15, 2009 Verdict of
the jury and the Special Verdict Interrogatories, attached hereto, following a trial in the above case,
**IT IS HEREBY ORDERED AND ADJUDGED THAT** Judgment is entered in favor of Defendants Its
Amore Corp. and T&M Dram Corp., and against Plaintiffs Gino M. Sabatini and Catherine M.
Sabatini, with respect to the Complaint of Plaintiffs, Gino M. Sabatini and Catherine M. Sabatini,
and their claim against Defendants Its Amore Corp. and T&M Dram Corp.

**IT IS ALSO ORDERED AND ADJUDGED THAT** Judgment is entered in favor of Plaintiffs
Alexander Tarapchak III and Its Amore Corp., and against Defendants Gino M. Sabatini and
Catherine M. Sabatini, with respect to the Complaint of Plaintiffs Alexander Tarapchak III and Its
Amore Corp.[2] and their claims against Defendants Gino M. Sabatini and Catherine M. Sabatini.

---

[1]The undersigned was the trial judge since the parties consented to my jurisdiction
pursuant to 28 U.S.C. §636(c).   (Doc. 79).

[2]On October 10, 2008, the District Court issued an Order consolidating the cases of
*Sabatini, et al. v. Its Amore Corp., et al.*, M.D. Pa. Civil No. 3:CV-05-2586, and *Tarapchak, et al.,*

**IT IS FURTHER ORDERED AND ADJUDGED** that Gino M. Sabatini and Catherine M. Sabatini are directed, within **thirty (30) days** of the date of this Judgment, to sell the subject parking lot to Alexander Tarapchak III for the amount of $100,000.00.

On October 26, 2009, Plaintiffs timely filed a post-trial Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial. **(Doc. 141)**.[3]

On October 28, 2009, Plaintiffs filed, pursuant to Fed. R. Civ. P. 62(b), a Motion for Stay of Proceedings to Enforce the October 16, 2009 Judgment Pending Disposition of their Post-Trial Motions. (Doc. 142). Plaintiffs filed their support Brief on November 4, 2009, and Defendants filed their opposition Brief on November 11, 2009. (Docs. 144 and 145). Plaintiffs filed their Reply Brief on November 16, 2009. (Doc. 146).

On November 19, 2009, the Court issued an Order and directed that:

"Plaintiffs' Motion for Stay of Proceedings to Enforce the October 16, 2009 Judgment Pending Disposition of their Post-Trial Motions **(Doc. 142)** is **GRANTED.** Defendants' request that Plaintiffs be required to post a $3 million bond during the pendency of the stay is **DENIED**."

(Doc. 148).

The Stay has remained in effect to date.

---

*v. Sabatini, et al.*, M.D. Pa. Civil No. 3:CV-08-1544. (*See* Doc. 61, Civil No. 05-2586). Both Complaints were consolidated into Civil No. 05-2586. Thus, the parties asserted separate claims against each other in separate Complaints.

[3]As the Court stated in *Jama Corp. v. Gupta*, 2008 WL 53101, *2-*3 (M.D. Pa.), "[u]nder Rule 50(b), a party may renew its request for a motion for judgment as a matter of law by filing a motion no more than ten (10) days after judgment is entered. *See* Fed. R. Civ. P. 50(b)." The Court in *Jama Corp.* also stated, "[u]nder Rule 59(a), motions for a new trial must be filed within ten (10) days of the date the judgment was entered. *See* Fed. R. Civ. P. 59."

On December 1, 2009, after being granted an extension of time, Plaintiffs filed their Brief in Support of their Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial. (Doc. 152). Defendants filed their Opposition Brief on December 16, 2009. (Doc. 153). On January 13, 2010, the Court heard oral argument on Plaintiffs' Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial. (Doc. 155).

Plaintiffs' Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial, is now ripe for disposition.

## II. Discussion.

Plaintiffs succinctly state the relevant factual history of this case in their Brief, and the Court accepts it, and quotes their Brief as follows:

On March 15, 1996, Plaintiff , Gino Sabatini ("Sabatini"), together with his brothers Carlo, Lindo and Nicholas, purchased a parcel of property on Routes 6 and 11 in South Abington Township from Anthony J. and Barbara Rinaldi. On that date, Sabatini and his brothers also entered into a Lease Agreement with Rinaldi for a parcel of property adjacent to the property they had purchased from Rinaldi. The Lease Agreement with Rinaldi was a sublease in that the property was owned by the Pennsylvania Power & Light Company [PP&L] and leased to Rinaldi.

Sabatini subsequently constructed a restaurant on the property they purchased from Rinaldi. Sabatini opened the restaurant on January 1997. In October of 1997, Sabatini and his brothers cancelled the sublease with Rinaldi for the parking lot and entered into a new lease directly with PP&L for the parking lot. The property originally subleased from Rinaldi and subsequently leased directly from PP&L was used as a parking lot for the restaurant. Sabatini closed the restaurant in January 2004.

In April of 2004, Sabatini entered into an agreement with Plaintiff, Alex Tarapchak ("Tarapchak"), and Defendant, Its Amore, Corp. ("Amore") for the sale of their restaurant. The agreement did not cover the parking lot property. On May 6, 2004, Sabatini and Tarapchak entered into an Addendum to the Agreement of Sale which provided in part as follows:

This Agreement of Sale executed between the parties on the __ day of April 2004 hereby amended as follows:

3

1. The Sale is contingent upon the assignment of sub-lease of the PP&L Lease Agreement in effect as of the date hereof, or of the sale or right to use the real property which is the subject of the PP&L Lease Agreement referenced herein. If Seller purchases PP&L property, and subsequently sells PP&L property to Buyer, sale price to Buyer will be identical to Sellers purchase price. (emphasis applied).

On June 16, 2004, Sabatini conveyed the restaurant to Amore. Eight months later, on February 17, 2005, Sabatini entered into a lease with Amore [FN1] for the parking lot. The parking lot lease was for a period of four years and granted Amore, in paragraph 16 thereof, an option to purchase the parking lot subject to conditions. Paragraph 16 states, in pertinent part, as follows:

Upon the expiration of the term of this Lease Agreement or upon full satisfaction, principal, and any and all accrued interest, of the Second Mortgage and Security Agreement in favor of Lessor dated June 18, 2004 plus the payment of all amounts due under this Lease Agreement, and in the event that there exists no event of default on the part of the Lessees and in the event that the Lease has not been previously terminated for cause, Lessee shall have the Option to Purchase the Leased Premises. (emphasis added).

FN1 T&M Dram Corp. was an operating company for Amore's restaurant. The reference in this brief to Amore includes T&M Dram Corp. where applicable.

The parking lot lease provided, *inter alia*, that Amore was required to maintain the topography of the parking lot and to maintain the parking lot in its existing condition. [Plaintiffs alleged that] Amore breached these provisions of the lease by removing landscaped islands in the parking lot, by filling in the detention basin on the southerly side of the parking lot and by removing crown vetch from the front embankment of the parking lot. [Plaintiffs alleged that] Amore's breaches constituted a default under the terms of the parking lot lease. Sabatini gave Amore notice of the default as required by the lease. [Plaintiffs alleged that] Amore failed to cure the defaults within the time provided by the lease. Sabatini then terminated the lease and instituted an ejectment lawsuit against Amore in the United States District Court in the Middle District of Pennsylvania.

Tarapchak claimed a right to purchase the parking lot under the Addendum set forth above. Amore claimed a similar right under paragraph 16 of the parking lot lease. Amore and Tarapchak attempted to exercise their alleged rights to purchase the parking lot. When Sabatini refused their requests, Amore and Tarapchak instituted a suit for specific performance in the Court of Common Pleas of Lackawanna County. In that suit, they asked the Court to enter an order requiring Sabatini to sell the parking lot. Sabatini removed the specific performance suit filed by Tarapchak & Amore to the United States District Court for the Middle District of Pennsylvania.

After the completion of discovery and the resolution of pretrial motions, the two cases were consolidated for trial before Magistrate Judge Thomas Blewitt. At the conclusion of the trial, the Court submitted special interrogatories to the jury. (Doc. 124). Based on the jury's answers, the Court entered judgment for Amore on Sabatini's ejectment claim and for Amore & Tarapchak on their claim for specific performance to purchase the parking lot. [Doc. 140.]

(Doc. 152, pp. 5-8).

As stated, Plaintiffs have filed a post-trial Motion for Judgment as a Matter of Law under Rule 50 and for a New Trial under Rule 59. (Doc. 141). Plaintiffs sought and were granted a stay of the enforcement of the Court's October 16, 2009 Judgment under Rule 62(b) until the Court decides their post-trial motion. (Doc. 148).

The standard applicable to a Motion for Judgment as a Matter of Law under Rule 50 was annunciated in the case of *Jeckwell v. Crestwood Area School Dist.*, 2008 WL 4372797, *1-*2 (M.D. Pa.), as follows:

> Rule 50 provides that after a party has been heard on an issue at a jury trial the court may order judgment as a matter of law if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a).
>
> Rule 50(b) involves renewing the motion after trial.
>
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment ... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Upon such a motion, the court may: 1) allow judgment on the verdict; 2) order a new trial; or 3) direct judgment as a matter of law.

Fed. R. Civ. Pro. 50(b).

The *Jeckwell* Court also stated:

> The Third Circuit Court of Appeals has set forth the standard of review we must follow in a motion for judgment as a matter of law as follows:
>
> > "The legal foundation for the factfinder's verdict is reviewed *de novo* while factual findings are reviewed to determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict." *Intermilo, Inc. v. I.P. Enterprises, Inc.,* 19 F.3d 890, 892 (3d Cir.1994) (internal quotations marks omitted).
>
> Rule 50 provides that after a party has been heard on an issue at a jury trial the court may order judgment as a matter of law if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a).

*Id.*

Therefore, the Court must decide if the evidence and inferences most favorable to Amore and Tarapchak afford a rational basis for the jury's finding that Amore did not breach the parking lot lease and that Sabatini could not terminate the lease and eject Amore, and for the jury's finding that Amore and Tarapchak were entitled to purchase the parking lot from Sabatini, and that Sabatini was required to sell them the parking lot.[4]

The standard applicable to a Motion for New Trial under Rule 50(a) was stated in *Schlier v. Rice*, 2008 WL 4922435, *4 (M.D. Pa.), as follows:

> The decision to grant a new trial is left to the sound discretion of the trial judge. *See Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834, at *1 (E.D.Pa.1995), *aff'd* 91 F.3d 122 (3d Cir.1996), *cert. denied* 519 U.S. 953, 117 S.Ct. 368, 136 L.Ed.2d 258 (1996). Courts have granted

---

[4]The Court will refer to the Sabatinis herein as "Plaintiffs" and to Amore and Tarapchak as "Defendants."

6

motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F.Supp. 477, 480 (E.D.Pa.), aff'd 983 F.2d 1051 (3d Cir.1992). Where the evidence is in conflict, and subject to two (2) or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir.1993).[5]

In *Hampden Real Estate, Inc. v. Metropolitan Management Group*, Inc., 253 Fed. Appx. 220, 222 (3d Cir. 2007), the Court stated, "[a] new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" (citation omitted).

With respect to their Motion for Judgment as a Matter of Law, Plaintiffs  argue that there was insufficient evidence for the Court to have allowed the jury to consider whether Defendants had breached the parking lot lease and whether Defendants had an option to purchase the parking lot.  Thus, Plaintiffs claim that they are entitled to Judgment as a Matter of Law with respect to these two issues.  Plaintiffs state that the parking lot lease required Defendants to keep the lot in its existing condition and prohibited them from making any changes to the topography of the lot.  Plaintiffs point out that the lease only gave Defendants an option to purchase the parking lot if the lease was not terminated for cause and it there existed no event of default when the option was executed.

---

[5]In their respective Briefs, both parties state the correct standards regarding Plaintiffs' Motion for Judgment as a Matter of Law and Motion for New Trial.

Plaintiffs then contend as follows:

> The undisputed evidence in the record was that Amore changed the existing condition and topography of the parking lot by removing the landscape island from the lot, by removing the crown vetch from the front embankment of the parking lot and replacing it with stone, and by filling in the detention basin on the southerly side of the lot. These changes to the parking lot were never cured by Amore and resulted in the termination of the parking lot lease by Sabatini. Therefore, because Amore's right to purchase the parking lot was specifically conditioned on there existing no event of default by Amore and on the continued existence of the lease, and because these conditions were not satisfied, Sabatini refused to sell the parking lot to Amore.
>
> Amore did not deny at trial that it had changed the parking lot by removing the crown vetch and the landscaped islands. Amore denied that there was a detention basin along side the parking lot but admitted that it changed the topography of that area. Amore defended against the claim that it was in breach of the parking lot lease by arguing that Sabatini had authorized the changes to the parking lot at an oral conversation with Tarapchak. Sabatini specifically denied having had such a conversation with Tarapchak.

(Doc. 152, p. 9).

Plaintiffs also refer to their Motion *in Limine* they filed prior to trial to preclude Tarapchak from testifying that Sabatini orally approved of the changes to the parking lot since they argued this testimony was barred by the Statute of Frauds ("SOF").

In their pre-trial Motion *in Limine* (Doc. 90), Plaintiffs argued that since the lease agreement regarding the parking lot was in writing, evidence that they (lessors) subsequently gave Defendants (lessees) oral permission to make changes to the parking lot was precluded under Pennsylvania Statute of Frauds in the trial for alleged breach of the lease based on the changes.

8

Defendants contended that prior to making the changes to the parking lot, they spoke to Plaintiffs about the changes and Plaintiffs consented to them. Specifically, in their Brief in opposition to Plaintiffs' Motion *in Limine*, Defendants stated:

> Amore's [Defendants'] proposed testimony will be that [Defendants' representative] Alex Tarapchak and [Plaintiff] Gino Sabatini had a telephone conversation in which Sabatini was informed of the improvements and repairs to be made to the parking lot and that he [Sabatini] consented to them. Clearly, this is relevant evidence not only on the issue of breach, but certainly on the issue of materiality as recognized in Judge Conaboy's [District Court] Opinion granting reconsideration.
> [Doc. 60].

(Doc. 92, p. 20).

Plaintiffs maintained that the District Court already found any proposed evidence that they orally approved of the changes Defendants made to the parking lot was barred by the Statute of Frauds. Plaintiffs pointed to the District Court's May 16, 2008 Memorandum (Doc. 46) in which it granted Plaintiffs' Motion for Partial Summary Judgment. (Doc. 91, pp. 11-12). Defendants stated that the District Court's August 26, 2008 Memorandum (Doc. 60) granting their Motion for Reconsideration of the Court's May 16, 2008 Memorandum allowed them to present evidence regarding the oral exchange between Defendants and Plaintiffs to show that Plaintiffs knew of the changes. Defendants indicated that the District Court, in its later Memorandum, found that any oral exchange between Defendants and Plaintiffs about the changes to the parking lot pertained to the parties' credibility in deciding the materiality of the breach of the lease and whether the doctrine of substantial performance would apply in the case. (Doc. 92, pp. 18-19). Defendants also argued that Pennsylvania law allows for a waiver of a provision in a written contract prohibiting oral modifications and that the evidence in the case

would show that Plaintiffs waived this provision.  (*Id.*, pp. 19-20).

In its August 26, 2008 Memorandum (Doc. 60), the District Court stated in part as follows:

> Because evidence [*i.e.* Tarapchak's testimony that Sabatini orally consented to the changes defendants made to the parking lot] now presented goes to the excuse for the deviation from the lease agreement and the complainant party's culpability for the breach, if the evidence were to be credited by a trier of fact, the doctrine of substantial performance may be applicable here.
>
> Finally, the fifth factor concerning the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing should be considered in the context of what the parties knew, when they knew it and what verbal exchanges took place  - - areas of inquiry which require further development and which, in this case, strongly implicate credibility."

(*Id.*, p. 19).

This Court concurred with Defendants and their arguments, and it denied Plaintiffs' Motion *in Limine* (Doc. 90), to the extent that it sought  to preclude Defendants, under the Statute of Frauds, from presenting any evidence that Plaintiffs gave Defendants oral permission to make changes to the parking lot.  This Court agreed with Defendants that the District Court already ruled Tarapchak could testify about his conversation with Sabatini and that Sabatini consented to the changes Defendants made to the parking lot.

In the case of *Deutsche Bank Nat. Trust Co. v. Evans,* 2009 WL 2496926, *3 (W.D. Pa.), the Court stated:

> The Statute of Frauds, in relevant part, provides:
>
> [N]o leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages,

manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.

33 Pa. Cons. Stat. § 1.

Leases are clearly mentioned in the Statute of Frauds, and it expressly applies to leases.

*Id.*

The Court in *Deutsche Bank Nat. Trust Co. v. Evans* further stated:

The clear object of the Statute of Frauds "is to prevent the assertion of verbal understandings in the creation of interests or estates in land and to obviate the opportunity for fraud and perjury. It is not a mere rule of evidence, but a declaration of public policy." *Kurland v. Stolker,* 533 A.2d 1370, 1372 (Pa.1987). Its purpose, therefore, is to avoid the opportunity for fraud and perjury likely to arise from oral conveyances of estates in land. *Holland Furnace Company v. Keystone Dehydrating Company,* 30 A.2d 872, 874 (Pa.Super.1943). The Pennsylvania Supreme Court has stated "[w]here perjury or fraud is impossible, there is no room for the statute ..." *Schuster v. Pennsylvania Turnpike Com.,* 149 A.2d 447, 451 n. 11 (Pa.1959) *quoting Christy et al. v.. Brien et al.,* 14 Pa. 248, 250 (1850). Moreover, the Statute is to be used as a shield and not as a sword,[FN3] as it was designed to prevent fraud. *Valvano v. Galardi,* 363 Pa.Super. 584, 591 (Pa.Super.1987); *Fannin v. Cratly,* 480 A.2d 1056, 1059 (Pa.Super.1984).

> FN3. The Court of Appeals for the Third Circuit has stated "Pennsylvania courts have declared that the purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue." *Flight Sys. v. Electronic Data Sys. Corp.,* 112 F.3d 124, 128 (3d Cir.1997).

*Id.,* * 5.

In their present opposition Brief, Defendants argue as follows:

[T]he law in Pennsylvania has long held that the parties to a written agreement, which contains provisions prohibiting oral modifications, may waive such a provision. *Warner v. MacMullen*, 381 Pa. 22, 29, 112 A.2d 74, 78 (1955).

Clearly, a waiver of such a provision is evidenced by the complete lack of objection by Sabatini to the additions, extensions and improvements performed on the property [parking lot] and for which building permits were issued by South Abington Township. Sabatini wishes to draw a distinction between his consent in these matters as opposed to the improvements made by Amore to the parking lot. The law on the issue of oral modifications is clear:

"An agreement prohibiting non-written modification may be modified by a subsequent oral agreement if the parties conduct clearly shows an intent to waive the requirements that amendments be in writing *Accu-Weather v. Prospect Communications*, 435 Pa. Super. 93, 101, 644 A.2d 1251, 1255 (1994).

At trial, Tarapchak testified to his conversation with Sabatini which was prompted by Sabatini's observation of changes being done to the property. Tarapchak specifically related that Sabatini expressed his concerns that all the work that was being done was approved by South Abington Township of which he was assured by Tarapchak. Tarapchak's testimony was unequivocal: Sabatini had no objection to the work being done on the parking lot.

The gist of Sabatini's assignment of error is that it was wrong for the Court to permit the oral modification testified to by Tarapchak because of the alleged violation of the statue of frauds.

As set forth in *Accu-Weather*, the conduct of the parties should be examined to determine whether there was an intent to waive the requirement and any amendment be in writing. Tarapchak's testimony concerning the conversation with Sabatini is directly corroborated by Sabatini's uncontested knowledge of the work being performed on the parking lot as evidenced by the photograph taken by Sabatini's brother and the e-mail exchanged between them. The evidence at trial clearly established that the photograph had to be taken within the first few days of work being performed by the excavator, Joe Sparrow in late September, 2005. Sabatini made no complaint until October 11, 2005 when the work was almost complete. Clearly, the jury had sufficient evidence, besides Tarapchak's testimony, that Sabatini knew of the work being performed and waited until it was substantially complete before making a complaint. Tarapchak argued, and the jury could reasonably conclude, that Sabatini had deliberately timed his purported

notice of default to allow the work to be substantially complete before making any objection in order to manufacture a default.

Under these circumstances, Tarapchak's testimony should not have been barred by the statute of frauds.

(Doc. 153, pp. 8-10).

The Court again agrees with Defendants and finds that they were properly allowed to present evidence at trial that Plaintiffs waived the lease provision barring modifications to the parking lot.

In the case of *The Herrick Group & Assoc. LLC v. K.J.T., L.P.*, 2009 WL 2750667, *13 (E.D. Pa.), the Court held:

> "An agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing. An oral contract modifying a prior written contract, however, must be proved by clear, precise and convincing evidence. *Brinich v. Jencka*, 757 A.2d 388, 399 (Pa.Super.Ct. 2000) (quoting *Somerset Cmty. Hosp. v. Allan B. Mitchell & Assoc., Inc.*, 454 Pa.Super. 188, 685 A.2d 141, 146 (Pa.Super.Ct.1996)); *accord ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244, 1249 (Pa.Super.Ct.2009) (quoting *Fina v. Fina*, 737 A.2d 760, 764 (Pa.Super.Ct.1999))."

In *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 494, n. 22 (E. D. Pa. 2009), the Court noted:

> Under Pennsylvania law, an agreement that prohibits non-written modification may be modified if by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing. *Accu-Weather v. Prospect Commc'ns.*, 435 Pa.Super. 93, 644 A.2d 1251, 1255 (1994). However, an oral contract modifying a prior written contract must be proven by "clear, precise and convincing evidence." *Somerset Cmty. Hosp. v. Mitchell & Assocs., Inc.*, 454 Pa.Super. 188, 685 A.2d 141, 146 (Pa.Super.Ct.1996) (citing *Pellegrene v. Luther,* 403 Pa. 212, 169 A.2d 298, 299 (1961)).

In *Caring People Alliance v. Educational Data Systems, Inc.*, 2008 WL 4441994, *8 (E.D. Pa.), the Court stated:

> [U]nder Pennsylvania law, "[a]n agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing." *Somerset Community Hosp. v. Allan B. Mitchell & Assoc., Inc.,* 454 Pa.Super. 188, 685 A.2d 141, 146 (Pa.Super.1996); *see also C.I.T. Corp. v. Jonnet,* 419 Pa. 435, 214 A.2d 620, 622 (Pa.1965). One such "implied waiver occurs when words or conduct express an intent not to exercise a known contractual right and when the person claiming the waiver was misled and prejudiced by this behavior." *LBL Skysystems (USA), Inc. v. APG-America, Inc.,* 2006 WL 2590497, at *16 (E.D.Pa. Sept.6, 2006) (quoting *In re MK Lombard Group, Ltd.,* 2005 WL 735993, at *11 (E.D.Pa. Mar.31, 2005)); *Brown v. City of Pittsburgh,* 409 Pa. 357, 186 A.2d 399, 401 (Pa.1962) ("In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, *to his prejudice,* into the honest belief that such waiver was intended or consented to" (internal quotations omitted)). This type of implied modification should be based on conduct consisting of "acts and declarations of the parties inconsistent with the existence of the original contract." *Weldon & Kelly Co. v. Pavia Co.,* 354 Pa. 75, 46 A.2d 466, 468 (Pa.1946). Thus, course of performance between contracting parties can modify a contract between them despite a provision prohibiting non-written modification. It can do so if one party acts in a manner inconsistent with its rights under the contract by not exercising known contractual rights, thereby misleading the other party into believing that the former has waived those rights, and thus prejudicing the latter party.

In fact, in the present case with respect to Jury Interrogatory No. 6, the jury specifically found that "Tarapchak substantially performed, without any material breach on his part, the terms of the Addendum he signed with [Sabatinis]." (Doc. 124).

The Court finds that the testimony of Tarapchak regarding the oral modification of the lease was admissible on the issue of waiver and his testimony on waiver, despite being completely contradicted by Sabatini's testimony, was clearly found to be credible by the jury.

14

On the contrary, Sabatini's testimony on the waiver issue was clearly not given any weight by the jury.

Therefore, the Court finds that there was sufficient evidence to allow the jury to determine whether Amore had breached the lease (Jury Interrogatory No. 1), and whether Tarapchak had an option to purchase the parking lot for $100,000 (Jury Interrogatory No. 5). Thus, the Court will deny Plaintiffs' Motion for Judgment as a Matter of Law with respect to Amore's claim for specific performance. The Court will also deny Plaintiffs' Motion for a New Trial with respect to their ejectment claim. The jury found that Amore was not in breach of its lease with Sabatinis in Jury Interrogatory No. 1. The jury then skipped to Jury Interrogatories Nos. 4 and 5, and found that Amore should be allowed to purchase the parking lot for $100,000 from Sabatinis, and that the Addendum required Sabatinis to sell the parking lot for $100,000 to Tarapchak. The Court finds that the evidence afforded the jury with a rational basis for its decisions.

Plaintiffs next argue that the Court should not have allowed the jury to interpret the Addendum to the Agreement of Sale, and that the Court should have interpreted it and found that it did not give Tarapchak the right to purchase the parking lot. Plaintiffs argue that the interpretation of the Addendum was for the Court since there was no ambiguity that the Addendum did not require them to sell the parking lot to Defendants. Plaintiffs contend that the Court should not have submitted Jury Interrogatories Nos. 4 and 5 to the jury since the evidence was insufficient regarding whether the lease required them to sell the parking lot to Defendants. Plaintiffs state that the evidence showed Defendants made substantial changes to

the parking lot and the lease prohibited changes.  Plaintiffs point out that the lease only required them to sell the lot to Defendants if Defendants did not breach the lease, and that since Defendants did breach the lease, Defendants had no right to purchase the lot.[6]

Plaintiffs' second argument again turns on whether the Court properly allowed Tarapchak to testify that Sabatini orally approved of the changes Defendants made to the parking lot.  Since the Court has addressed this issue above, as well as the waiver issue, it does not repeat its findings regarding this claim of error by Plaintiffs.  Further, as indicated above, the District Court in its  August 26, 2008 Memorandum (Doc. 60) previously found that Tarapchak would be allowed to testify that Sabatini orally approved of the changes Defendants made to the parking lot.

It is apparent from the jury's verdict that Defendants, who sought to prove the stated oral exchange between Tarapchak and Sabatini regarding the changes they made to the parking lot,

---

[6]Defendants state that Plaintiffs failed to object to Jury Interrogatories Nos. 4 and 5 during trial.  (Doc. 153, p. 12).  The Court's recollection is in agreement with Defendants' recollection.  The Court does recall spending a great deal of time with both counsel going over proposed Jury Interrogatories as well as Jury Instructions, and that several drafts of the Jury Interrogatories were typed up and reviewed before counsel and the Court agreed, without objection, upon the final version which the jury received.

In *Hampden Real Estate, Inc. v. Metropolitan Management Group, Inc.*, 253 Fed. Appx. 220, 223  (3d Cir. 2007), the Court stated:

> "Finally, Hampden contends that the District Court erred by submitting confusing interrogatories to the jury. Rule 51 of the Federal Rules of Civil Procedure provides that no party may assign error to jury instructions unless it objected thereto. Failure to object to an instruction at the time the jury receives it constitutes a waiver of this objection. *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 463 (3d Cir.1999)."

proved, at trial, its existence by "clear, precise, and convincing evidence." *The Herrick Group & Assoc. LLC v. K.J.T., L.P.*, 2009 WL 2750667, *13 citing *Middleton v. Realen Homes, Inc.*, 24 F. Supp.2d 430, 435 (E.D. Pa.1998) (Joyner, J.); *Empire Props., Inc. v. Equireal, Inc.*, 449 Pa. Super. 476, 674 A.2d 297, 304 (Pa. Super. Ct.1996).[7]

It is clear from the jury's verdict and responses to the Jury Interrogatories that Defendants met their burden at trial and proved the existence of the stated oral exchange between Tarapchak and Sabatini by clear, precise, and convincing evidence. Thus, this evidence was properly considered by the jury regarding its determination of the parties' credibility, in deciding the materiality of the breach of the lease, and in deciding whether the doctrine of substantial performance applied in this case. As stated, the jury overwhelmingly found the testimony of Tarapchak to be credible as opposed to Sabatini's testimony. The jury believed Tarapchak and found that Sabatini had no objection to the work which was undisputedly being done on the parking lot, notwithstanding the language of the parking lot lease. Also, as Defendants point out, Tarapchak's testimony about his conversation with Sabatini was substantiated by the evidence of the photo Sabatini's brother took of the parking lot in September 2005 showing the work and the e-mails between the two Sabatini brothers.

Further, as Defendants stated during the January 13, 2010 oral argument, the evidence revealed that Tarapchak wanted the Addendum as a condition for the sale of the restaurant and the assurance that Plaintiffs would sell the parking lot to him for the same price Plaintiffs bought

---

[7]The Statute of Frauds applies if the parties seek specific performance. It does not apply if the parties seek money damages. *See The Herrick Group & Assoc. LLC v. K.J.T., L.P.*, 2009 WL 2750667, *13, n. 13.

the lot from PP&L. The parking lot was clearly essential to Defendants for their intended use of the restaurant, a use well known to Plaintiffs, and the jury obviously made such a determination. The Court agrees with Defendants, in consideration of the evidence in its entirety, that the Addendum required the sale of the parking lot to them since the undisputed evidence showed that Tarapchak would not have bought the restaurant in the first place if he could not later buy the lot which was essential for parking for the patrons of the Amore Restaurant. The evidence also showed that Plaintiffs were well aware that Tarapchak purchased the restaurant from them based on his intention to later buy the parking lot once Plaintiffs could purchase it from PP&L, and that Tarapchak wanted assurances that he would only have to pay the amount Plaintiffs purchased the lot from PP&L. Plaintiffs sought to have the Addendum considered in a vacuum. The jury was properly allowed to hear the entire evidence and put the Addendum in context based on all of the facts and not based on only a portion of the evidence, as Plaintiffs maintain the jury should have been made to do.

The parties' history of dealings clearly established that they had an understanding that Defendants would be allowed to purchase the parking lot which surrounded the restaurant they purchased after Plaintiffs bought the lot from PP&L, notwithstanding the language in the Addendum. As stated, the evidence indicated that Plaintiffs knew that Tarapchak purchased the restaurant from them based on his intention to later buy the parking lot once Plaintiffs could purchase the lot from PP&L. *See Meyers v. Sudfeld*, 2007 WL 419182, *10 (E.D. Pa.), citing *Westinghouse Elec. Co. v. Murphy, Inc.,* 425 Pa. 166, 228 A.2d 656, 659 (Pa.1967) (holding that "if evidence of the contract is not an integrated document, and, moreover, one partly or wholly

composed of oral communications, ... courts must look to surrounding circumstances and the course of dealings between the parties ... to ascertain the intention of the parties").

In fact, the Court agrees completely with Defendants who state as follows in their Brief:

> Tarapchak's uncontested testimony was that the Addendum was an absolute pre-condition to the purchase of the restaurant, that a mere lease (even if there remained a balance of almost 20 years) was insufficient to him to justify paying a purchase price of $1.2 million dollars when all of that would be at risk at the end of the lease, and that the Addendum was prepared and sent to him by Gino Sabatini for his approval and execution. Although Sabatini complains of a lack of specificity in this document, there as much as in the option language contained in the lease between Sabatini and Its Amore. The fact of the matter is that both Sabatini and Tarapchak knew that the sale of the restaurant was conditioned upon the sale of the parking lot and Sabatini admitted so when cross examined. The jury was not asked to interpret this document, fill in missing terms or vary the agreement between the parties. Sabatini's argument in this regard is an attempt to confuse and obfuscate a fairly straight-forward and simple business transaction: that Sabatini would sell Tarapchak the parking lot for the same price he paid for it. Surely, Sabatini did not argue at the time of the trial, and cannot logically argue now that the Addendum was meaningless or superfluous; as a matter of practicality, all of the facts adduced at the trial by both Sabatini and Tarapchak clearly and convincingly show the necessity of the Addendum as an intrical part of the transaction between the parties.

(Doc. 153, pp. 13-14).

The jury clearly considered the Addendum in the case's complete context and found Mr. Tarapchak's testimony credible that when he purchased the restaurant from Mr. Sabatini he also intended to purchase the parking lot once Sabatini could buy it from PP&L.  The jury also found Sabatini was well aware of Tarapchak's intentions and, it found that Sabatini later reneged on his agreement to sell Tarapchak the parking lot despite Tarapchak's payment in full of all monies he owed Sabatini under the lease.  Defendants' evidence also explained why Sabatini would not object to the modifications Defendants made to the parking lot when Tarapchak contacted

him about them, *i.e.* Sabatini knew that Tarapchak was going to buy the parking lot anyway.

The jury also used its common sense to determine that Tarapchak would not possibly want to own a restaurant surrounded by a parking lot, which was the only place for his customers to park, that he did not own. The jury found that initially Tarapchak had to lease the parking lot from Sabatini rather than buy it at the time Tarapchak bought the restaurant from Sabatini because Sabatini was still waiting to buy the lot from PP&L. Indeed, this was why Tarapchak insisted that Sabatini allow him to buy the parking lot for the same price that Sabatini later bought it from PP&L.

In short, Plaintiffs now seek for the Court to disallow the history considered by the jury between Sabatini and Tarapchak which was necessary for the jury to make its determinations. The Jury Interrogatories, which were painstakingly prepared with input from both counsel, reveal that the jury made all the necessary determinations and did so in complete favor of Defendants.

The Court also agrees with Defendants that Plaintiffs did not prove any harm regarding their breach of contract claim and that Plaintiffs did not establish any damages. In fact, Defendants state that in addition to Plaintiffs' failure to present any evidence of damages at trial, Sabatini only testified that Tarapchak did not deserve to buy the parking lot. Further, the municipality where the parking lot was located, South Abington Township, had no problems with the modifications Defendants made to the parking lot, and no regulatory agency took any action regarding the changes Defendants made to the lot.

In *Meyers v. Sudfeld*, 2007 WL 419182, *10 (E.D. Pa.), the Court stated:

> "Generally speaking, for a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski*, 812 A.2d at 692 (citing *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.1999)).

As stated, the Court concurs with Defendants that Plaintiffs failed to establish their breach of contract claim since they did not come forward with sufficient evidence on an essential element of their claim, namely that they suffered any damages as a result of the modifications Defendants made to the parking lot. Also, as Defendants state (Doc. 153, p. 11), "the jury found no action taken by Amore constituted a breach." As Defendants contend, Plaintiffs' claims in their post-trial motions are "that the jury simply did not agree with [their] assessment [regarding a breach] since it quickly and conclusively determined that no breach was occasioned by Amore thus entitling [Defendants ] to specific performance for the conveyance of the parking lot." (Doc. 153, p. 12).

Therefore, the Court will deny Plaintiffs' Motion for Judgment as a Matter of Law with respect to Tarapchak's claim for specific performance.

Regarding their Motion for a New Trial, Plaintiffs argue that they are entitled to a new trial due to improper closing remarks made by Defendants' counsel during trial. Plaintiffs contend that Defendants counsel improperly argued during his closing remarks that Sabatini had earlier made changes to the parking lot similar to the changes Defendants made to it before Sabatini owned it which were prohibited by Sabatini's sublease with Rinaldi. Plaintiffs state that their counsel objected to these remarks and claimed that the sublease Sabatini had with Rinaldi

for the parking lot was not introduced into evidence.

In *Vandenbraak v. Alfieri*, 209 Fed. Appx. 185, 189 (3d Cir. 2006), the Court stated:

> Under the standards laid out in *Draper v. Airco, Inc.,* 580 F.2d 91, 96 (3d Cir.1978), and clarified in *Fineman,* 980 F.2d at 207, we grant new trials in situations where it is "reasonably probable" that defense counsel's improper remarks influenced the jury verdict. *See also Forrest,* 424 F.3d at 351 (3d Cir.2005) (citing *Fineman,* 980 F.2d at 207). In *Draper* we concluded that the District Court erred in refusing to grant a new trial because
>
> > [w]here ... a closing address to the jury contains such numerous and serious violations of so many rules of proper argument as occurred here, we must conclude that it is more than "the prejudicial statements.... [Moreover,] the curative instruction was not sufficient to remove the probability of prejudice....
>
> *Draper,* 580 F.2d at 96-97 (citation omitted). In *Fineman,* we affirmed a District Court decision denying the motion for a new trial because "not all improper remarks will engender sufficient prejudice to mandate the granting of a new trial." 980 F.2d at 207. Rather than reviewing for "a single instance of impropriety," we take "the argument as a whole." *Id.* at 208.

The Court finds that Plaintiffs are attempting to have the Court review the closing remarks of Defendants' counsel for a sole incident of an alleged impropriety rather than to look at his remarks as a whole. Also, the Court does not find that it was reasonably probable that Defendants counsel's remarks influenced the jury's overwhelming verdict in favor of Defendants. The court finds that, notwithstanding the remarks, the jury still would have found in favor of Defendants since its determinations were predominantly based on their finding that Tarapchak was much more credible than Sabatini.

Additionally, the Court agrees entirely with Defendants' brief in which they state as follows:

Sabatini's argument in this regard is nothing more than a red herring. On cross-examination, Sabatini was specifically questioned on his own actions in developing the property in the context of the PP&L lease which he claimed to contain identical terms to that between himself and Amore. Sabatini at first admitted that his actions constituted a change in topography and almost immediately caught himself claiming instead that his actions were really only a change in "grade". Counsel's argument focused upon this admission by Sabatini and sought to contrast Sabatini's claims of "harm" with the actual result of the changes undertaken by Amore. In this regard, again on cross-examination, Sabatini was repeatedly asked as to what harm he suffered, and if he was harmed, then why he did not simply accept the purchase price from Tarapchak. Sabatini could not articulate any harm and his best explanation for not selling the parking lot was that neither Amore nor Tarapchak "deserved to buy it".

The overwhelming evidence produced for the jury's consideration was that Sabatini's claims of breach, harm and detriment were unworthy of any consideration since the jury found in accordance with the Interrogatories submitted to them without objection by Sabatini that the actions of Tarapchak and Amore did not breach the lease.

The changes made by Amore were a matter for the jury's evaluation to determine their significance. Sabatini has claimed the changes were significant, material and exposed him to losses. On cross-examination, Sabatini could point to no loss and could offer no reasonable explanation for refusing to accept the purchase price. Amore contended, and the jury apparently believed, that the changes were not material and in fact, improved the functionality, appearance and utility of the parking lot. Again, this factual determination is precisely why factual issues are resolved by jury decisions. *Lind, supra.* The overwhelming evidence adduced at trial was more than sufficient for the jury to conclude that Sabatini's complaints of breach were mere contrivances, that his letters claiming breach were self-serving and unsubstantiated and that he was completely and totally unable to meet his burden of proof in establishing any damages arising from the alleged breaches. Even assuming any legitimacy to this argument, Sabatini's claim of error in the context of counsel's remarks concerning Sabatini's own actions in developing the property in the context of the PPL lease, they were insignificant. Sabatini cannot show that counsel's argument was such that it unduly swayed the members of the jury. *Betterbox, supra.*

(Doc. 153, pp. 16-18).

Therefore, the Court will deny Plaintiffs' request for a new trial based on the closing remarks of Defendants' counsel.

Plaintiffs also argue that they are entitled to a new trial due to the testimony of Tarapchak that Sabatini orally agreed to the changes to the parking lot since they were inadmissable under the Statute of Frauds. The Court has detailed above its finding regarding the stated testimony of Tarapchak, and it does not repeat it. The Court also adopts the argument of Defendants on the stated issue, in which they state:

> Weighed in the context of the overwhelming evidence and testimony against Sabatini, the issue of the oral exchange between Tarapchak and Sabatini was insignificant at best. It is as reasonable to conclude as probable that the jury was more greatly persuaded by Sabatini's own evidence showing him to be aware of changes in the parking lot when his brother took the photograph in late August, [2005] and waiting until the work had progressed to almost complete in October [2005] before making any complaint as opposed to Tarapchak's testimony concerning the oral permission granted by Sabatini. Here, Sabatini did not demonstrate that it is highly probable that Tarapchak's testimony affected his substantial rights. *Waldorf, supra*. Viewed in the context of probability, the more credible, direct and uncontradicted evidence was that of waiver: Sabatini knew about the work, allowed it to progress and then attempted to use it to claim a breach seeking a forfeiture of the parking lot. Tarapchak's testimony concerning oral modification was vigorously contested by Sabatini and as such, could not be as weighty to the jury's consideration on the issue of breach.

(*Id.*, pp. 18-19).

Further, Plaintiffs contend that the Court should grant them a new trial since the jury's verdict was against the weight of the evidence. As the Court has discussed above, and as stated by Defendants, "the evidence in support of [Defendants] and against [Plaintiffs] was so clear, convincing and overwhelming that the jury required less than 20 minutes to make its decision by answering only the very first of the five (5) Interrogatories submitted to them." (*Id.*, p. 19).

Also, as the Court has repeatedly stated, this case mainly turned on the jury's credibility finding of Tarapchak and Sabatini, and it is clear that the jury found Tarapchak considerably more credible than Sabatini, and its speedy verdict reflected this.

Finally, Plaintiffs argue that the Court should grant them a mistrial due to alleged inflammatory and improper statements made by Tarapchak when he was testifying at trial. Plaintiffs simply state that "Tarapchak testified before the jury that he had sued Sabatini for fraud in another case." (Doc. 152, p. 18). Plaintiffs contend that Tarapchak's testimony on cross-examination by Plaintiffs counsel was unresponsive to the question and "brought to the jury irrelevant and inflammatory evidence which clearly prejudiced Sabatini." (*Id*.).

Defendants' Brief puts the stated issue in proper perspective. Defendants state:

> There is no question that Tarapchak testified that he had sued Sabatini for fraud. This was in response to [Plaintiffs'] counsel's cross-examination as to what Tarapchak did when he learned that Sabatini had failed to complete all the improvements required by the land planning submission filed with South Abington Township. Sabatini knew full well the existence of that suit, the claim of fraud and Tarapchak's claim for damages well before the trial in this matter. Sabatini did not request such evidence be excluded via a Motion in Limine and cannot complain of a response that was elicited to a question challenging a witness on the propriety of his actions when confronted with Sabatini's own failure.

(Doc. 153, pp. 19-20).

The Court agrees with Defendants that Tarapchak's answer to the question from Plaintiffs' counsel was responsive. Also, as Defendants assert, Plaintiffs did not file a motion in limine to try and preclude Tarapchak from mentioning his fraud suit against Sabatini. The Court has repeatedly agreed with Defendants that the jury's verdict in this case, which was largely based on the jury's credibility determination with respect to the testimonies of Mr. Sabatini and

25

Mr. Tarapchak, was completely in favor of Amore and Mr. Tarapchak. The Court finds that in light of all of the evidence in the case, and in light of the jury's overwhelming finding that Tarapchak was more credible than Sabatini, the stated testimony of Tarapchak had little affect on the jury's findings and verdict.

Accordingly, the Court will issue an Order denying Plaintiffs' Motion for a Judgment as a Matter of Law and their Motion for a New Trial. (Doc. 141). The Court will also lift the Stay it imposed in its November 19, 2009 Order. (Doc. 148).


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 28, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINO M. SABATINI and | : | CIVIL ACTION NO. **3:CV-05-2586** |
| CATHERINE M. SABATINI, his wife, | : | |
| | : | |
| Plaintiffs | : | Magistrate Judge Blewitt |
| | : | |
| v. | : | |
| | : | |
| ITS AMORE CORP. and T&M | : | |
| DRAM CORP., | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW,** this **28**[th] of May**, 2010**, pursuant to the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion for a Judgment as a Matter of Law and their Motion for a New Trial **(Doc. 141)** are **DENIED.  IT IS ALSO ORDERED** that the Stay of Proceedings to Enforce the October 16, 2009 Judgment Pending Disposition of Plaintiffs' Post-Trial Motions (Doc. 148)  is **LIFTED effective immediately as of the date of this Order.**

**IT IS FURTHER ORDERED** that Gino M. Sabatini and Catherine M. Sabatini are directed, within **ten (10) days** of the date of this Order, to sell the subject parking lot to Alexander Tarapchak III for the amount of $100,000.00.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
 **United States Magistrate Judge**


**Dated:  May 28, 2010**